UNITED STATES v. JOVITA PEREZ (No. 4588) [1]

United States Court of Customs and Patent Appeals, March 1, 1949

*David N. Edelstein*, Assistant Attorney General (*Charles J. Miville*, Acting Head of Customs Division, and *Joseph F. Donohue*, special attorney, of counsel), for the United States.

*Lamb & Lerch* (*John G. Lerch* and *Prew Savoy* of counsel) for appellee.

[Oral argument February 1, 1949, by Mr. Donohue and Mr. John G. Lerch]

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the First Division, Appellate Term, of the United States Customs Court, rendered pursuant to its decision, Reap. Dec. 7432, 19 Cust. Ct. 292, modifying the judgment of the trial court, rendered pursuant to its decision, Reap. Dec. 6402,

---

[1] C. A. D. 407.

17 Cust. Ct. 331, involving Reappraisement Nos. 155670–A and 155715–A, and finding a cost of production in accordance with section 402 (f) of the Tariff Act of 1930 (19 U. S. C. A. sec. 1402 (f)), as applying to flavoring syrup imported from Mexico into the United States.

The merchandise involved consists of a unit of six barrels of .50 gallons each of a flavoring syrup called "El Masco." It was entered at the invoice price of $51 per barrel, less nondutiable charges, which resulted in a net entered value of $167.06 for the unit. The appraiser advanced the value to $215.16 for the unit of six barrels.

The trial court held that the cost of the imported merchandise was $135.25 per unit of six barrels. Both parties applied for a review of that decision under authority of section 501 of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938.

The appellate court held that the cost of the merchandise involved was $147.85 per unit of six barrels, and modified the judgment of the trial court accordingly. The appellate court also held that "The statutory value found herein is lower than the importer's entered value, but the latter becomes the basis for assessment of duties under the provisions of section 503 of the Tariff Act of 1930." The Government has appealed from that decision.

The trial court found the facts to be as follows:

1. That the merchandise herein consists of "El Masco" a sugar flavoring sirup, imported from Mexico during a period of 13 months, beginning November 1942 and ending November 1943.

2. That there was no foreign, export, or United States value.

3. That the cost of production was the proper basis to be used for the finding of value under the provisions of section 402, Tariff Act of 1930.

4. That the cost of materials and fabrication in the production of the particular merchandise in question during said 13-month period is $89.70 per unit of six barrels of 50 gallons each, as claimed by the plaintiff.

5. That the usual general expenses were less than the statutory 10 per centum of the cost of the particular merchandise under consideration, and therefore the amount applicable herein is 10 per centum of the amount shown in paragraph 4, or $8.97.

6. That the cost of packing and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States, was the amount agreed upon between counsel, to wit, $5.18 per unit of six barrels.

7. That the profit applicable to the merchandise at bar as ordinarily added in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of Mexico who were engaged in the production or manufacture of the same class or kind of merchandise is 35 per centum of the sum of the cost of the materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such merchandise at a time preceding the date of exportation of the particular merchandise herein which would permit the manufacture or production of the particular merchandise under consideration in the usual course of business; and that such profit amounts to $31.40 per unit of six barrels.

8. That the cost of production of the merchandise at bar during the 13-month period is the sum of the amounts shown in paragraphs 4, 5, 6, and 7, or $135.25 per unit of six barrels of 50 gallons each.

The appellate court found the facts to be as follows:

(1) That the proper basis for appraisment of the "El Masco" sirup in question is cost of production, section 402 (f), *supra.*

(2) That the cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing said merchandise, as contemplated by paragraph (1) of said section 402 (f), is $89.70 per unit of six barrels of 50 gallons each.

(3) That the applicable amount for usual general expenses, paragraph (2) of section 402 (f), *supra,* is 10 per centum of the cost of materials and fabrication, set forth in finding of fact (2), or $8.97.

(4) That the cost of packing and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States, paragraph (3) of section 402 (f), is $5.18 per unit.

(5) That the profit applicable herein, paragraph (4) of section 402 (f), is $44, or 44.59 per centum of subparagraphs (1) and (2) of said section 402 (f).

The appellate court also held,

Accordingly, we hold as matter of law that the statutory cost of production of a unit of six barrels of 50 gallons each of the "El Masco" sirup under consideration is the sum of the amounts stated in findings of fact (2), (3), (4), and (5), or $147.85.

The statute involved is section 402 (f) of the Tariff Act of 1930, *supra,* which reads as follows:

(f) For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

Both parties agree that the basis of appraisement, the statutory cost of production, is correct. The issue before us is, therefore, the proper determination of the cost of production (embracing the subsidiary issue of the proper determination of "the profit which ordinarily is added") within the meaning of section 402 (f), *supra.*

The evidence discloses that the Pepsi-Cola Company, a domestic corporation, organized the Mexican-American Flavors Co., S. A., of Monterrey, Mexico, in August 1942, for the purpose of manufacturing flavoring syrup for use in the manufacture and bottling in the United States of the beverage known as "Pepsi-Cola"; that the Mexican corporation was established because the war created an acute shortage of sugar, one of the basic ingredients of "Pepsi-Cola," and after an agreement had been reached between the Pepsi-Cola Company and the Mexican Government to the effect that Mexican-American Flavors Co., S. A., would purchase "any surplus sugar they (Mexico) had without limit," the actual amount to be delivered being "the difference between what they needed for their local consumption in Mexico and the amount that was produced." The syrup manufactured was called "El Masco" and, being the sweetening element used in "Pepsi-Cola," all production was sent to the United States for ultimate use.

The appeal before us covers the first shipment (a unit of six barrels, of 50 gallons each) of "El Masco" syrup, but it has been agreed between the parties that the facts adduced herein concerning the statutory cost of production, section 402 (f) of the Tariff Act of 1930, *supra*, concededly the proper basis for appraisement, shall apply to the entire period between November 1, 1942, and November 30, 1943, the period during which the Mexican-American Flavors Co., S. A., was in existence. That company is now in the process of liquidation.

Both parties introduced evidence relating to the cost of production of "El Masco."

Counsel for the Government here contends that there is no substantial evidence of record to sustain the decision of the appellate court that the statutory item of profit applicable is $44 per unit of six barrels; and that there is substantial evidence to support the Government's claim that the profit per unit of six barrels of "El Masco" is 98.15 per centum of the cost of production.

Counsel for appellee contends that there is substantial evidence of record to sustain the findings of the appellate court.

*United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378, is cited by both parties in their briefs. That case concerned the cost of production for tariff purposes of merchandise exported from Germany. Because both appellant and appellee here regard that case as supporting its position, we quote from the decision as it refers to the addition of profit:

It would appear, therefore, that it was not the intent of Congress, when it enacted said section 206, to limit the cost of production, in cases where said section was applicable, to the actual cost of production of the imported merchandise, including actual profit realized by the manufacturer, and we think a like construction should be given to said section 402 (e) of the Tariff Act of 1922. [Prototype of section 402 (f) of the Tariff Act of 1930.] In other words, as we construe said paragraph 4, it is not enough to establish what the ordinary profit of the

manufacturer of the imported merchandise was, if merchandise of the same general character was produced and sold by others in the country of exportation, and the profit made thereon is reasonably ascertainable. If not so produced and sold by others, the profit ordinarily made by the manufacturer of the imported merchandise in producing goods of the same general character as the imported merchandise may be resorted to in arriving at the statutory cost of production. We have so held with respect to said section 206 of the Antidumping Act of 1921. *Cottman & Co.* v. *United States,* 20 C. C. P. A. (Customs) 344, T. D. 46114.

It is our view that there is no occasion for construing said paragraph 4 by eliminating any portion of it as unworkable, as indicated by the lower court, but that it should be reasonably construed to effectuate the apparent intent of Congress, viz, that the profits of the manufacturer of imported merchandise shall not be the sole criterion in the application of the statute, but where there is other evidence in the record, or available to the parties with respect to profits ordinarily made by other manufacturers of merchandise of the same general character as that imported, in the country of exportation, such evidence must be considered by the appraising officers and by the court upon reappraisement, and the amount of profit should be determined according to the weight of all the evidence bearing upon the subject.

From the foregoing quotation it seems clear that the actual profit of the manufacturer of the involved merchandise is not the sole criterion for finding the addition for profit under section 402 (f) (4), *supra.* The computation of the item of profit is not limited to any particular manufacturer or manufacturers, but rather extends to all the manufacturers of the particular merchandise under consideration as well as other manufacturers of merchandise of the same class or kind—if any—and "the amount of profit should be determined according to the weight of all the evidence bearing upon the subject."

The evidence discloses that there were only four manufacturers or producers of flavoring syrup of the same class or kind as that involved here in Mexico during the period with which we are concerned. The manufacturers and their shipments are as follows:

Industrias Unidas_____ 20 shipments
Remigio J. Rodriguez_____ 43 shipments
Extractos y Sabores_____ 116 shipments
Mexican-American Flavors Co_____ 2600 shipments

The appellate court, in its decision relating to Industrias Unidas, Remigio J. Rodriguez, and Extractos y Sabores, said, "The evidence, relating to each of the three Mexican manufacturers hereinabove reviewed, does not support the reason for which it was offered. None of them maintained adequate books of account or other substantial records upon which the provisions of section 402 (f) (4), *supra,* can be applied. The proof relating to their business activities falls far short of satisfying the purpose for which it was intended." There is substantial evidence in the record to sustain that finding of the appellate court.

Following the principle enunciated in the *Maier* case, *supra,* we hold that the allowance to be made for profit in determining cost of production herein is the amount ordinarily added by the manufacturer

of the instant merchandise, because it is the only Mexican manufacturer that kept records from which the amount of the costs of production and the amount of the profit usually added can be ascertained. For the purpose of this case, the Mexican-American Flavors Co., S. A., is the sole manufacturer of merchandise of the same class or kind as the particular merchandise under consideration. It naturally follows that the profit usually added is the profit actually added.

The Mexican-American Flavors Co., S. A., the exporter of the merchandise here involved, was an affiliate of the Pepsi-Cola Company, and was established for the sole purpose of manufacturing "El Masco" syrup. The evidence shows that it was organized and operated in a highly efficient manner, and maintained thorough accounting records.

Appellant's exhibit 6 is a Customs Agent's report, prepared by Treasury Representative S. J. Kennedy, which contains a detailed statement of the cost of production of the imported merchandise based upon an interview with the treasurer and accountant, respectively, of the Mexican-American Flavors Co., S. A., and upon figures taken from the records of that company. That exhibit discloses that the company's sales records showed that "El Masco" was sold at the price of $296.00, U. S., per unit, F. O. B. Monterrey, N.L., Mexico, freight, customs duties, and insurance prepaid to any point in the United States. From the detailed data supplied by the Mexican-American Flavors Company, S. A., and incorporated as appendices to exhibit 6, *supra*, covering freight rates, cost of raw materials and fabrication of "El Masco," usual and general expenses, wages, and selling expenses for the 13-month period, November 1942 to November 1943, inclusive, the Treasury Representative, S. J. Kennedy, compiled the following computation as illustrative of the cost of production and profit:

| | | |
|---|---|---:|
| Selling price per carload of 17 units | | US$5,032.00 |
| Less non-dutiable charges: | | |
|     Insurance to border | Mex$28.42 | |
|     Freight to destination | 3,162.62 | |
|     Cargadores | 10.00 | |
|     Customhouse brokers' fees, etc | 38.02 | |
|     Consular fees | 12.70 | |
| | 3,251.76 | |
|     Converted at 4.85 | | 670.46 |
| | | 4,361.54 |
| Less sugar tax at 0.5144¢ on (say) 32,725 lbs | | 168.34 |
| | | 4,193.20 |
| Less duty at 20% (16⅔% of above) | | 698.87 |
| Dutiable value | | 3,494.33 |

```
Cost of materials and labor_____  Mex$7,468.04
Overhead at 11.63972%_____       869.26
                                                 ─────────
                                                  8,337.30
Converted at 4.85_____  US$1,719.03

                                                              1,775.30
Packing Mex. $427.21 converted at 4.85_____      88.08

Profit_____   1,687.22
     or 98.15% on materials, labor and overhead.
```

Stated in terms representative of a unit of six barrels, the following figures, based on the foregoing, are illustrative of the cost of production and profit:

```
Selling price_____  $296.00
Less nondutiable charges_____     90.45
                                             ──────  $205.55
Cost of labor and material_____     90.58
Overhead_____     10.54
                                             ──────   101.12

                                                      104.43
Packing_____      5.18     5.18
                                                     ───────
Profit_____             99.25
     or 98.15% on materials, labor and overhead.
```

Mr. Mack, President of the Pepsi-Cola Co., and also President of the Mexican-American Flavors Company, S. A., testified as to the cost of production of "El Masco," but his testimony related only to estimates made in the latter part of 1941, which was several months before "the plant was in operation." "El Masco" was not manufactured until about one year later, in August 1942. He gave no testimony as to the actual cost of production. He testified that he estimated the Mexican-American Flavors Co., S. A., would make about 33 per centum or $44 profit on each unit of six barrels of "El Masco." He gave no testimony as to how much the actual profit was. Mr. Mack testified, in part, as follows:

R. D. Q. Now just one other thing. You said there was a reason why the sales price of 296 was fixed. Would you state that reason briefly?—A. We tried to figure—this whole enterprise was based on helping our small bottlers get sufficient supply of sweetening so they could put out Pepsi-Cola and stay alive. We, therefore, had two problems, getting it to them and getting it to them at a price which would allow them to exist.

We figured that the maximum price that they could afford to pay for this 300 gallons to make up the finished Pepsi-Cola in bottles, so it could be retailed for 5 cents, was a top price of the cost to them of $296 at their plant, because we know pretty well what their cost of production was from there, and that is the reason the price was fixed to $296.

It seems apparent that the Mexican-American Flavors Co., S. A., was organized for the sole purpose of supplying syrup to Pepsi-Cola bottlers in the United States, and that the selling price of the syrup, "El Masco," was fixed at "the maximum price that they could afford to pay for this 300 gallons to make up the finished Pepsi-Cola in bottles, so it could be retailed for 5 cents."

It also seems apparent that the manufacturer intended to charge, and did charge, the maximum price the bottlers could afford to pay regardless of the cost of production or the amount of profit, if any, it might make.

The item of profit cannot be based upon the "estimated profit" but must be based on the profit usually added.

The only substantial evidence in the record as to the cost of production and the profit usually added is the evidence appearing in appellant's exhibit 6. It is obvious, therefore, that there is no substantial evidence to sustain the judgment of the single judge or the judgment of the appellate court. Accordingly, the judgment of the appellate court is *reversed*, and the cause *remanded* for further proceedings not inconsistent herewith.